IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TENAHA LICENSING LLC,

                Plaintiff,

      v.

TIGERCONNECT, INC.,

                Defendant.

C.A. No. 19-1400-CFC

**JURY TRIAL DEMANDED**

**OPENING BRIEF IN SUPPORT OF DEFENDANT
TIGERCONNECT, INC.'S RULE 12(b)(6)
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Dated: August 20, 2019

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5452 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay, *pro hac vice*
Ricardo J. Bonilla, *pro hac vice*
Andria Rae Crisler, *pro hac vice*
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5158 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
crisler@fr.com

**COUNSEL FOR DEFENDANT
TIGERCONNECT, INC.**

# TABLE OF CONTENTS

Page(s)

I.   NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II.  SUMMARY OF ARGUMENT .......................................................................... 1

III. STATEMENT OF THE FACTS ......................................................................... 2

IV.  ARGUMENT .............................................................................................. 5

    A.   This Case Should Be Dismissed Under Rule 12(b)(6) .......................................... 5

    B.   The Law of 35 U.S.C. § 101. .................................................................. 6

    C.   The Patent-in-Suit Is Invalid Under 35 U.S.C. § 101. ....................................... 7

        1.   The independent claims of the '869 Patent are not patent eligible. ................. 7

        2.   The dependent claims of the '869 Patent are not patent eligible ................... 16

        3.   There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage. ................................. 18

    D.   The Indirect Infringement Claims Should Be Dismissed ..................................... 19

V.   CONCLUSION ........................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)..................................................................7, 10, 13

*AgroFresh Inc. v. Essentiv LLC,*
No. CV 16-662-MN-SRF, 2018 WL 6974947 (D. Del. Dec. 27, 2018)................................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)........................................................................... *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.,*
908 F.3d 1343 (Fed. Cir. 2018).......................................................................11

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016).......................................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Can. (U.S.),*
687 F.3d 1266 (Fed. Cir. 2012).......................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................6

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)......................................................................19

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012)......................................................................20

*Bilski v. Kappos,*
561 U.S. 593 (2010)......................................................................6, 8, 17, 19

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)....................................................................8, 18

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014)..............................................................12, 16, 18

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
880 F.3d 1356 (Fed. Cir. 2018)......................................................................11

*Deere & Co. v. AGCO Corp.*,
No. CV 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019) .........................................20

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)................................................................................................................6

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).....................................20

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)......................................................................................12, 16

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)..............................................................................11, 12, 13

*Epic IP LLC v. Backblaze, Inc.*,
2018 WL 6201582 (D. Del. Nov. 26, 2018) ..........................................................................8

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016)..............................................................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).............................................................................................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015).............................................................................................8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)......................................................................................9, 18

*Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*,
No. 2:17-cv-328-JRG, 2017 WL 5571331 (E.D. Tex. Sept. 15, 2017) .................................14

*Martin v. Cordrey*,
2017 WL 3866053 (D. Del. Sept. 5, 2017) ............................................................................5

*Maxon, LLC v. Funai Corp., Inc.*,
726 F. App'x 797 (Fed. Cir. 2018) .........................................................................1, 13, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)...............................................................................................................17

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)..........................................................................................6, 7

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672 (2018) ...................................16

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018)................................................................8, 11, 12

*In re TLI Commc'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016)...............................................................16

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)............................................6

**Statutes**

35 U.S.C. § 101............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 12 ..............................................................................1, 5, 7, 18, 20

## I.     NATURE AND STAGE OF PROCEEDINGS

On July 27, 2019, Tenaha Licensing LLC filed this lawsuit accusing TigerConnect, Inc. of infringing at least Claim 15 of the U.S. Patent No. 8,238,869 because TigerConnect "provide[s] emergency and non-emergency event notifications . . . to a plurality of users." (D.I. 1-2, at 2.) The '869 Patent is entitled, "Lifesaver Personal Alert and Notification Device."

## II.     SUMMARY OF ARGUMENT

Relaying emergency and non-emergency notifications is an abstract idea ineligible for patent protection. The claims of the '869 Patent, which Tenaha asserts in this case, are directed to this abstract idea and do not claim any inventive concept. The Supreme Court held in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), that such patent claims are invalid as a matter of law under 35 U.S.C. § 101 because the mere addition of computer elements does not confer eligibility on claims directed to an otherwise ineligible abstract idea. *Alice*, 573 U.S. at 226–27.

Like the patents found invalid in *Maxon, LLC v. Funai Corp., Inc.*, 726 F. App'x 797 (Fed. Cir. 2018), the '869 Patent claims no more than "[an] input/output logic configured to receive [signals]" and "a transceiver providing the inbound . . . [and] receiving an outbound" responsive signals. *Maxon*, 726 F. App'x at 798–99. The '869 Patent simply claims the desired result of relaying notification signals, but does not cover any concrete method of implementing such idea nor solve any specific technical problems identified in the prior art systems.

In addition, Tenaha's induced infringement claim must also fail because Tenaha did not make any allegations to show that TigerConnect knew its customers' acts allegedly infringed the '869 Patent. Resolving these issues does not require more discovery or claim construction. Tenaha's factual allegations, even when presumed true, do not support a plausible claim. Therefore, TigerConnect requests the Court to grant its motion to dismiss Tenaha's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.  STATEMENT OF THE FACTS

The '869 Patent issued on August 7, 2012, and is entitled "Lifesaver Personal Alert and Notification Device." (D.I. 1 ¶ 8.) The '869 Patent is generally directed to "systems, devices, and methods of transmitting in a wide area notification zone a plurality of notification to a plurality of users in an automated, independent, and localized manner." ('869 Patent at 1:66–2:2.)

The applicant admitted that "numerous devices and methods for alert notification are known in the art." (*Id.* at 1:58–59.) The applicant also acknowledged he did not invent the concept of relaying alerts or notifications between devices. Indeed, the applicant admitted that both "wide area alert/notification systems" and "local area alert/notification systems" already existed, "and depending on the particular system, individual parties or the general public are addressed with a specific message" using these systems. (*Id.* at 1:14–18.) According to the applicant, wide area notification systems usually "include radio transmission to Tone Alert Radio (TAR), cable and/or radio-controlled operation of sirens, public announcement systems, public bill boards, and/or automated dialers that call a geographically defined group of phone and/or pager subscribers." (*Id.* at 1:24–28.) And the local area notification systems were commonly used to provide "area specific notification" and are "typically not used for alert." (*Id.* at 1:41–51.)

The applicant identified, however, various purported disadvantages of the existing wide area notification systems, including that the prior art required access to a TAR or telephone, lost accuracy in loud and noisy environments, and relied on cell phone coverage. (*Id.* at 1:29–40.) In addition, local area notification systems usually relied on an operator "to manually relay [a] message through the local paging system." (*Id.* at 1:52–57.) The applicant's concern was thus to provide "systems, devices, and methods of transmitting in a wide area notification zone a plurality of notifications to a plurality of users in an ***automated***, independent, and localized manner." (*Id.*

at 1:66–2:2 (emphasis added).) That is, the applicant sought simply to automate extant relay processes.

Claim 15 is the only claim asserted in Tenaha's Complaint and is representative of the claims:

> 15. A method of providing emergency and non-emergency event notification to a plurality of users, comprising:
>
> using a low-range transceiver to automatically relay within a wide area notification area a first emergency notification signal from a wide area notification device, and to further provide an audible and/or visible alert notification in response to the first emergency notification signal; and
>
> manually, and independently from the first emergency notification signal, providing a second non-emergency notification signal to at least one of the plurality of users using the low-range transceiver, wherein the non-emergency notification signal is a user-specific and event-specific notification signal that is transmitted by an operator of the low-range transceiver to a wireless transmitter that is worn by a user, wherein the user is a person other than the operator.

(*Id.* at cl. 15.) Claim 15 of the '869 Patent can be broken down into two steps: (1) automatically relaying an emergency signal from a wide area notification device within a wide area notification area using a low-range transceiver; and (2) using the low-range transceiver to manually relay a non-emergency signal to a wireless transmitter worn by a user. (*Id.*)

Claim 15 is directed exclusively to the desired result of signal relay, but does not recite how it is achieved. Neither does the specification. Instead, the applicant made clear through his own language in the specification that the components for carrying out the claimed method are nothing more than generic network signaling elements. For example, the wide area notification device can be virtually any device "that receive[s] an emergency related signal from a central operator or alert station." (*Id.* at 7:25–28.) In addition to a siren tower and public announcement stations, a suitable wide area notification device "may [also] be stationary (e.g., highway billboard, desktop computer or server, TV set, etc.) or mobile (e.g., laptop computer via hotspot or other

wireless access, TAR in a hospital or hotel, cell phone or pager, etc[.]).” (*Id.* at 7:24–32.) No specialized configuration or arrangement is required. The applicant further acknowledged that even the concept of automatic emergency signaling was known in the art. (*See id.* at 1:27–28 (“Commonly known instances for such wide area notifications include . . . automated dialers that call a geographically defined group of phone and/or pager subscribers.”).)

The claimed transceivers may include any “device that is configured to receive and transmit radio signals” as well as “devices that are configured to only receive radio signals.” (*Id.* at 4:53–58.) The low-range transceiver “refers to all transceivers that are configured to operate at a frequency and/or power output such that the service zone of the low range transceiver is smaller than the wide area notification zone.” (*Id.* at 4:36–40.) No details are provided either in the claims or the specification as to how the low-range transceiver automatically relays an emergency signal. Nor is any specialized configuration required. And the wearable transceiver is any device configured to provide notifications “in at least one of a visual, audible, and tactile manner.” (*Id.* at 8:55–57.) The wearable transceiver therefore includes pagers, cell phones, and GPS devices. (*Id.* at 6:28–32.) Nor is the notification signal anything new. (*Id.* at 8:57–65 (“For example, preferred visual manners [of notification manners] include displayed messages on a small color screen, LCD display, alphanumeric display, or indicator lights lit next to a preformatted text message. . . . [S]uitable audible manner include beepers, spoken messages using polyphonic speakers, and/or a sequence of particular signal or ring tones, Morse-code, etc. Tactile notification may be performed via vibrating or knocking elements, and/or via thermal hot/cold spots.”).)

The unasserted claims simply add more generic network signaling components, such as a trigger device. The trigger device is “any interface between the wide area notification device and the low-range transmitter” and may be “a virtual device (e.g., software code)” or “a physical device

(e.g., circuit board that relays activation signal of the siren)." (*Id.* at 5:1–3, 5:9–14.) The transmission between the trigger device and the low-range transceiver "is preferably via radio waves and/or hardwired connections." (*Id.* at 5:39–44.) And the suitable signals transmitted to the wearable transceivers "include text messages, voice messages, signals to activate strobe lights, vibrating implements, and/or hot/cold spots (e.g., Peltier element)." (*Id.* at 8:16–18.)

Figure 1A shows the "schematic of an exemplary notification system in which the trigger device is physically associated with the wide area notification device." (*Id.* at 3:32–34, Fig. 1A; *see also id.* at 6:65–7:23.) No details are provided as to how the low-range transceiver automatically transmits signals from a wide area notification device. (*Id.* at 5:44–51.) Nor are any details provided as to how the low-range transceiver is configured to transmit non-emergency signals. (*Id.* at 6:13–21.) In other words, Figure 1A (and the '869 Patent itself) merely describes a basic diagram involving relaying a notification signal between devices.

## IV. ARGUMENT

### A. This Case Should Be Dismissed Under Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. The Court may grant a motion to dismiss if "after accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Martin v. Cordrey*, 2017 WL 3866053, at *2 (D. Del. Sept. 5, 2017) (internal quotation omitted). Importantly, "[a] well-pleaded complaint must contain more than mere labels and conclusions." *Id.* Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the

parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## B. The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added).

Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). Hence, the § 101 analysis for abstract ideas requires courts to determine "whether the claims [at issue] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). "The abstract idea exception prevents patenting a result where it matters not by what process or machinery the result

6

is accomplished." *Id.* at 1312 (internal quotation omitted). Accordingly, "[c]laims that are so result-focused, so functional, as to effectively cover any solution to an identified problem are frequently held ineligible under section 101." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016) (internal quotation omitted).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 217. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (internal quotation omitted).

### C. The Patent-in-Suit Is Invalid Under 35 U.S.C. § 101.

The Court should dismiss Tenaha's claim regarding the '869 Patent. The claims of the '869 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each claim of the asserted patent is directed to the abstract idea of relaying notification signals. And none of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 217–18 (emphasis added). Because Tenaha has failed to state a claim upon which relief may be granted, TigerConnect respectfully requests that the Court grant its motion and dismiss Tenaha's infringement claim with prejudice. FED. R. CIV. P. 12(b)(6).

#### 1. The independent claims of the '869 Patent are not patent eligible.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 218. Under any plausible reading, the claims of the patent are directed to an unpatentable abstract idea because they claim nothing more

than the "longstanding," "routine," and "conventional" concept of automatically relaying signals between notification devices. *See id.* at 218–25; *Bilski*, 561 U.S. at 611.

**(a)**  *Alice* **Step 1: The independent claims of the '869 Patent are directed to an abstract idea.**

Claim 15 is directed to the abstract idea of relaying notification signals. ('869 Patent at 1:66–2:2.) In assessing whether this claim is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018).

The claimed advance of the '869 Patent is the automatic relay of a notification from a wide area notification device to a low-range transceiver. ('869 Patent at 3:41–46.) This claimed automatic notification is a concept, not an invention, and thus ineligible for patent protection. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (holding that "communicat[ing] a notification to user via a device" when a limitation was reached was a patent ineligible abstract idea); *Epic IP LLC v. Backblaze, Inc.*, 2018 WL 6201582, at *5 (D. Del. Nov. 26, 2018) ("The problem, however, is that the idea of a chat session separate from

8

the original website is not an invention; it is a disembodied concept. The asserted claims of the '599 patent recite the concept, but not the way to implement it.").

The Federal Circuit has held that "the 'realm of abstract ideas' includes 'collecting information, including when limited to particular content.'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (internal quotation omitted). In addition, "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* For example, in *Fair Warning*, the Federal Circuit held claims that recited a system and method of "collecting and analyzing information to detect misuse and notifying a user when misuse is detected" directed to an abstract idea. *Id.* Likewise, Claim 15 is directed to a combination of these two abstract processes—relaying notification signals from a wide area notification device and sending notification signals to users. ('869 Patent, at cl. 15.) Claim 15 therefore falls under the category of patent ineligible abstract ideas. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (holding that claims covering a system and method of "dynamically manag[ing] multiple sets of XML documents" were "at their core, directed to the abstract idea of collecting, displaying, and manipulating data"). Indeed, the '869 Patent admits that "[a]ll or almost all of the currently known alert systems may be categorized into either wide area alert/notification systems or local area alert/notification systems, and depending on the particular system, individual parties or the general public are addressed with a specific message." ('869 Patent at 1:14–18.) Thus, even the claimed concept itself was commonly known in the art prior.

Moreover, Claim 15 recites nothing more than an end-result. It does not describe how the desired result—automatic signal relay—is achieved. (*Id.*) Rather, Claim 15 is directed to the idea

itself. The functional nature of Claim 15 is similar to that in the claims held ineligible by the Federal Circuit in *Affinity Labs*. In that case, the claims covered a system of providing regional broadcast signals to out-of-region recipients. *Affinity Labs.*, 838 F.3d at 1258. Even though the claims referred to some physical components, "such as a cellular telephone, a graphical user interface, and a downloadable application," the Federal Circuit found the patent-in-suit "claim[ed] the ***function*** of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function." *Id.* (emphasis added).

The same is true here. For example, Claim 15 invokes just three physical components—a wide area notification device, a low-range transceiver, and a wireless transmitter—and describes those components only by restating what they can do, without particularity. (*See* '869 Patent at cl. 15.) No details are provided either in the claims or the specification as to how the low-range transceiver automatically relays an emergency signal from the wide area notification device. Nor is any specialized configuration required. Indeed, the applicant acknowledged that automatic emergency signaling using wide area systems was known in the art. (*See id.* at 1:27–28 ("Commonly known instances for such wide area notifications include . . . automated dialers that call a geographically defined group of phone and/or pager subscribers.").)

The limitation of "audible and/or visible alert notification" does not change the functional nature of Claim 15, as the claim does not disclose any specific means to ***achieve*** such "audible and/or visible" notifications. Nor does providing a user-specific and event-specific local area notification, as the '869 Patent acknowledges that such systems already existed in the prior art. (*Id.* at 14–18 ("[D]epending on the particular system, individual parties or the general public are addressed with a specific message.").) In addition, methods and systems to manually transmit non-emergency specific notifications were also commonplace. (*Id.* at 1:41–52 ("Most commonly, local

area alert/notification systems find use in restaurant paging to indicate availability of a table in a restaurant, or in hospitals that alert a doctor or nurse of a patient in need of attention.").)

As a result, Claim 15 is directed to the abstract idea of relaying notification signals, and does not contain any specificity that may transform claims from function-dependent (ineligible) to computer-improving (eligible). *See e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (affirming that the claims were patent-ineligible where "[t]hey do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."); *SAP Am., Inc.*, 898 F.3d at 1167 ("[C]laims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea.") (internal quotation omitted); *cf. Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), as amended (Nov. 20, 2018) (holding claims patent eligible because they were directed to "a ***non-abstract*** computer-functionality improvement [] done by ***a specific technique*** that departs from earlier approaches to solve ***a specific computer problem***") (emphasis added).

Given that Claim 15 of the '869 Patent fails to recite any specific technology improvement, the claim is critically different from what the Federal Circuit has determined to be patent eligible. For example, in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), rather than using conventional user interface systems, the claims were directed to a "particular manner of summarizing and presenting information in electronic devices." *Core Wireless*, 880 F.3d at 1362 (finding claims "disclose[d] an improved user interface for electronic devices, particularly those with small screens" and "improve[d] the efficiency of using the electronic device"). Similarly, in *Enfish*, the Federal Circuit found the claims patent eligible because the focus "is on the specific asserted improvement in computer capabilities," rather than

"on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36. In contrast, the focus of Claim 15 is relaying notification signals— "an improvement in wholly abstract ideas," rather than an improvement "in the way computers and networks carry out their basic functions." *SAP Am. Inc.*, 898 F.3d at 1168.

That Claim 15 is limited to communicating signals between notification devices does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). As the Supreme Court explained in *Alice*, "the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Alice*, 573 U.S. at 222–23 (internal quotation omitted); *see buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (narrowing the claims to cover only online transactions was "an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Thus, Claim 15 is directed to an ineligible abstract idea of relaying notification signals, even if its limitations require practicing that idea in the technological environment of notification devices.

The other two independent claims of the '869 Patent, claims 1 and 8, fare no better under this analysis: they are directed to the same abstract idea. The Supreme Court has made clear that reciting a handful of generic computer components configured to implement the same idea does not convert an ineligible abstract idea into an eligible subject matter. *Alice*, 573 U.S. at 225. Claims 1 and 8 recite an alert/notification system consisting of a trigger device that receives signals from a wide area notification device and sends specific signals to a low-range transceiver. ('869 Patent,

at cls. 1, 8.) Specifically, the hardware that achieves the "claimed advance" of the '869 Patent—the trigger device—merely consists of two generic computer modules performing their generic functions: "***an input module configured to*** receive a first signal from the wide area emergency notification device" and "***an output module configured to*** provide a second signal to the low-range wireless transceiver." (*Id.* at cl. 1 (emphasis added).)

The Federal Circuit recently found a patent directed to a similar concept ineligible in *Maxon*. In *Maxon*, the Federal Circuit affirmed the district court, which "found that the claims recite only generic computing processes using functional language" where the claims recited "input/output logic configured to receive from a user a desired change" and "a transceiver providing the inbound signaling word to the network . . . [and] receiving an outbound signaling word . . . responsive to the desired change." *Maxon*, 726 F. App'x at 798–99. As in *Maxon*, claims 1 and 8 do not confer patent eligibility because they are not directed to any improvement to computer functionality. Instead, they are directed to the generic receiving and transmitting signals, "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36; *see Affinity Labs*, 838 F.3d at 1261 (finding "the conveyance and manipulation of information using wireless communication" patent ineligible when the involved "components were conventional and were used in conventional ways").

The claimed advance of the independent claims—automatic signal relay—is an abstract idea, not a patent-eligible invention. Accordingly, the independent claims fail the first step of the *Alice* test.

        **(b)**     *Alice* **Step 2: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.**

The '869 Patent's independent claims merely apply the applicant's desired concept in a generic technological environment using conventional computer components and functions, and thus do not contain an inventive concept sufficient to confer eligibility.

The Supreme Court is clear that "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. For example, in *Maxon*, the claims invoked only generic physical computer components, including "a computer-readable medium, input/output logic, a processor, and a transceiver." *Maxon*, 726 F. App'x at 799. The Federal Circuit found the claims patent ineligible because "the specifications d[id] not limit the breadth of [those] elements" and "the claims merely recite[d] generic computer elements for their basic functions." *Id.* at 799–800. Likewise, the specification of the '869 Patent is generic and devoid of any improvement or non-conventional use of basic components.

Other courts have found similar claims patent ineligible. *See Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*, No. 2:17-cv-328-JRG, 2017 WL 5571331 (E.D. Tex. Sept. 15, 2017). In *Mantis Communications*, for example, the court found that a "trigger system," which was described as "any system capable of capturing a unique identifier," did not confer any inventive concept because it was "described by the specification in unlimited terms." *Mantis Commc'ns*, 2017 WL 5571331, at *2–3. Likewise, the trigger device claimed in the '869 Patent, which is the hardware that purportedly achieves the "claimed advance," does not invoke any non-conventional process, as it merely contains "an input module" that receives wide area signals and "an output module" that sends signals to a low-range transceiver. ('869 Patent at 2:13–18.) The '869 Patent describes the trigger device in such broad terms that it can virtually be any device that can "perceive, receive, and/or relay a notification signal" and "activate the low-range transceiver."

(*Id.* at 5:1–9). Put another way, at its core, the claimed trigger device only performs generic computer functions such as detecting, receiving and transmitting signals.

Further, the '869 Patent acknowledges that both wide and local area alert/notification systems already existed in the prior art. (*Id.* at 1:14–18.) Wide area alert/notification systems typically "include radio transmissions to Tone Alert Radios (TAR), cable and/or radio-controlled operation of sirens, public announcement systems, public bill boards, and/or automated dialer." (*Id.* at 1:24–29.) Those wide area alert/notification systems purportedly suffered disadvantages such as reliance on TAR or telephone coverage. (*Id.* at 1:29–40.) Yet, the claimed system uses these exact same hardware—"especially contemplated wide area notification devices include siren towers, tone alert radios, telephones, pagers, computers, TV sets, etc." (*Id.* at 2:26–28.) In addition, the claimed wide area notification device is only configured to transmit "[c]ommonly known" signals, such as "audible alert signal (e.g., siren sound, public announcement), a visually perceptible signal (e.g., flashing light, displayed text message), or an electronic signal that activates an emergency response device (e.g., flood gate, shut-down device for air intake of air conditioning in a building or complex)." (*Id.* at 1: 24–29, 3:59–64.) The low-range transceiver is also only configured to transmit signals in conventional manners, such as "via radio waves and/or hardwired connections." (*Id.* at 5:43–44.)

The same is true for the wireless transceivers, as "[t]here are numerous transceiver configurations known in the art." (*Id.* at 8:46–50.) Further, the claimed wireless transceivers only provide notifications via generic manners, such as "visual, audible, and tactile manner." (*Id.* at 8:55–57.) Examples include "displayed messages" on different types of screens, "beepers," "spoken messages using polyphonic speakers," "ring tones," "Morse-code," "vibrating," etc. (*Id.* at 8:57–65.) These suggested ways of presenting notifications do not disclose anything inventive

compared to the manners employed in "most of the local paging systems"—"blinking light, buzzing, and/or numeric display." (*Id.* at 1:47–49.); *see RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672 (2018) ("Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify [an abstract idea.]").

Moreover, the '869 Patent does not specify any improvements to overcome the purported disadvantages of the existing systems and provides nothing inventive to confer patentability. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–14 (Fed. Cir. 2016) (holding that the claims were patent ineligible, where the specification described the claims "as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art."). And there is simply nothing inventive of these "well-understood, routine, activit[ies]." *Id.* at 613; *see buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Consequently, the independent claims recite only generic components—a trigger device comprised of an input module and an output module—and generic hardware—a wide area notification device, a low-range transceiver and a wireless wearable transmitter. The notification system is no more than a conventional system for communicating data that lack any inventive concept sufficient to confer patentability under step two of the *Alice* test. *See Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and display technology for gathering, sending, and presenting the desired information.").

### 2. The dependent claims of the '869 Patent are not patent eligible.

The dependent claims of the '869 Patent add additional limitations regarding the abstract idea, but none of them include the specificity necessary to confer patent eligibility. Nor do they

include anything other than generic components and processes. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012) ("Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law.") (internal citations omitted); *Bilski*, 561 U.S. at 610–11 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'") (internal quotations omitted). Accordingly, the dependent claims suffer from the same flaws as the independent claims and should also be found patent ineligible.

The dependent claims of the '869 Patent are directed to four groups: (1) the types of wide area notification devices, (2) the functions of the trigger device, (3) the functions of the low-range transceiver, and (4) the functions of the wireless transmitter. Claims 2 and 16 describe the wide area notification device as "at least one of a siren tower, a tone alert radio, a telephone, a pager, a computer, and a TV set." ('869 Patent at cls. 2, 16.) Claims 3–4, 9, 17 and 23 note that the trigger device is coupled to the wide area notification device, (*id.* at cls. 3, 9, 17, 23), and that its output module is configured to send notifications "to the low-range transceiver via a radio signal or an electric cable," (*id.* at cl. 4). Claims 5–6, 10, 14, 18 and 22 describe the function of the low-range transceiver, including its operation condition, (*id.* at cls. 5, 10), and the types of signals it can process, (*id.* at cls. 6, 11, 14, 18). Lastly, claims 7, 11–13 and 19–21 relate to the function of the wireless transmitter. For example, the wireless transmitter is configured to provide "signal in at least one of a text display format, a verbal audible format, a strobe display, a hot/cold spot, and a vibrating function," (*id.* at cls. 7, 18), and is configured to transmit "a feedback signal to the low-range transceiver," (*id.* at cls. 13, 20). As discussed above, receiving and transmitting signals is an

abstract idea, and limitations such as different types of signals that the system can process and the already known notification devices, without more, do not change the claims' unpatentability.

These limitations do not transform the abstract idea of relaying notification signals into a patentable subject matter because they are result-oriented and do not specify how the desired results are achieved. *See Capital One Fin. Corp.*, 850 F.3d at 1342 ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more.") (citing *Elec. Power Grp.*, 830 F.3d at 1356). Further, the dependent claims do not add any inventive concept because the suggested hardware and transmission methods already existed in the prior art, ('869 Patent at 1:24–29, 2:32–35), and receiving and sending signals over a standard network "is not even arguably inventive." *buySAFE, Inc.*, 765 F.3d at 1355. The dependent claims do not inject any unconventional components or techniques that amount to "significantly more" than the abstract idea. Rather, they simply implement the abstract idea of signal relaying with basic computer components and generic networks. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Thus, the dependent claims of the '869 Patent, like the independent claims, fail both steps of the *Alice* test and are invalid under §101.

**3.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility of the '869 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis. Additionally, there are no factual disputes on this record. The '869 Patent does not assert any unconventional mechanism of

implementing the claimed idea. It claims the desired result of relaying notification signals, but goes no further.

This case is thus unlike *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit then examined whether the improvements described in the specification were included in the claims. *Id.* To the extent that the claims captured those inventive features, the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional way. Although the '869 Patent identifies some limiting factors for the existing systems, such as reliance on "access to a TAR or telephone" and "lack of reliable [cell phone] coverage area," ('869 Patent at 1:31–40), neither the specification nor the claims include any limitations that purport to solve those concerns, such as non-conventional hardware or networks. *See Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use or adding token postsolution components d[oes] not make the concept patentable.").

Accordingly, this issue is ripe for the Court's consideration, and the '869 Patent should be found invalid for failing to claim patent eligible subject matter.

### D. The Indirect Infringement Claims Should Be Dismissed.

In addition to the invalidity of the asserted '869 Patent, Tenaha's indirect infringement claim should be dismissed because Tenaha has pled nothing more than a bare recitation of the elements. *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662-MN-SRF, 2018 WL 6974947, at *6

(D. Del. Dec. 27, 2018) ("Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to dismiss under Rule 12(b)(6)."). With respect to induced infringement, Tenaha alleges that "Defendant actively, knowingly, and intentionally has been and continues to induce infringement of the '869 Patent, literally or by the doctrine of equivalence, by selling Exemplary TigerConnect Products to their customers for use in end-user products in a manner that infringes one or more claims of the '869 Patent." (D.I. ¶ 15.) These are legal conclusions, not factual allegations. Courts have found almost identical allegations insufficient to survive a motion to dismiss. *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *3 (D. Del. Dec. 19, 2018) (dismissing claim that "provide[s] merely a formulaic recitation of the elements of an inducement claim").

Tenaha's allegations of contributory infringement are much the same, (*see* D.I. ¶ 16), except that Tenaha fails to "plead facts that allow an inference that the components sold or offered for sale have no substantial noninfringing uses"—Tenaha does not allege this element at all. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *see also Deere & Co. v. AGCO Corp.*, No. CV 18-827-CFC, 2019 WL 668492, at *8 (D. Del. Feb. 19, 2019) ("[Plaintiff's] failure to allege that those products (i.e., components) have no substantial noninfringing use nullifies its claims for contributory infringement."). Tenaha has therefore failed to plausibly allege indirect infringement.

## V.     CONCLUSION

For the foregoing reasons, TigerConnect respectfully requests that the Court dismiss Tenaha's patent infringement claim based on the '869 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, TigerConnect requests dismissal with prejudice.

Dated: August 20, 2019

**FISH & RICHARDSON P.C.**

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Ave., 17th Floor
    P.O. Box 1114
    Wilmington, DE 19801
    (302) 652-8452 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    Ricardo J. Bonilla
    Andria Rae Crisler
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    (214) 747-5158 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com
    rbonilla@fr.com
    crisler@fr.com

**COUNSEL FOR DEFENDANT
TIGERCONNECT, INC.**